# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILFREDO SANTIAGO,

     Petitioner,

     v.

ROBERT COLLINS, et al.,

     Respondents.

2:12-cv-02659-WY

# MEMORANDUM

YOHN, J.                                              February 20, 2014

      Wilfredo Santiago, an inmate at the State Correctional Institution at Frackville, has filed a petition for a writ of habeas corpus. Santiago was convicted of aggravated assault, attempted burglary, and resisting arrest in the Court of Common Pleas of Philadelphia, and sentenced thereafter to a total of 21-42 years incarceration. The magistrate judge issued a report and recommendation recommending the writ be granted with respect to the aggravated assault conviction, with remand to the Court of Common Pleas for retrial. After conducting a *de novo* review of the magistrate judge's report and recommendation, and upon careful consideration of the petitioner and the respondents' objections to the report and recommendation and the parties' replies thereto, I will sustain the respondents' objections and deny the petition for relief.

## I.      Factual and Procedural Background

### A.      Conduct and Arrest

1

The Pennsylvania Superior Court, in reviewing Santiago's direct appeal, summarized the events which led to his arrest:

> In the late hours of January 17, 2003, [Santiago] met his estranged wife, Jeannette Rodriguez, in the kitchen at the Snapperhead Bar at 2126 East Lehigh Avenue in Philadelphia, where Ms. Rodriguez worked as a cook. The two began to argue. The argument grew loud enough to attract the attention of the bar's owner who asked [Santiago] to leave. [Santiago] asked the owner for more time to speak with his wife, and the owner obliged him. After a few minutes, the argument again became heated, and several people including the bar owner ran to the kitchen. They found [Santiago] with Ms. Rodriguez, who was crying and had a fresh visible cut near her eye. The owner again asked [Santiago] to leave, and [Santiago] said he was sorry and again asked for time to speak to his wife. Again he was allowed to remain. Finally, after another ten minutes, [Santiago] again fought physically with Ms. Rodriguez. This time several people were needed to pull [Santiago] away from Ms. Rodriguez while he swung at her, and Ms. Rodriguez left the premises soon thereafter. Police arrived at the bar and spoke with [Santiago], but they did not arrest him and he thereafter left.
>
> Approximately 45 minutes later, two police officers were dispatched to 6607 Souder Street, a house owned by Ms. Rodriguez and located approximately 5.4 miles from the bar. They were responding to three emergency calls reporting, respectively, a domestic incident, an act of vandalism in progress, and a break in. Upon arrival at Ms. Rodriguez's house, police observed [Santiago] banging on the front door and yelling. After exiting their vehicle and approaching [Santiago] on foot, the police heard further yelling inside of the house, including a loud female voice screaming "he's trying to break in" and "he just beat the s*** out of me." They also observed that, of three or four panes of glass on the door, one had been broken and another was missing. Approaching closer, the police saw the screaming woman through the door, and noticed that she had injuries to her face. At this time, the police observed blood on [Santiago]'s shirt and right arm. The police also observed broken glass on the top landing where [Santiago] was standing and fresh blood on the door with the broken window pane.
>
> …
>
> The police moved [Santiago] away from the door by grabbing him by his arms and telling him that they wanted him to sit in the police car while they assessed the situation. [Santiago] complied until he sat down in the back seat of the police car with his legs still out the door, and the officers asked him to lift his legs into the car so they could shut him inside. [Santiago] repeatedly refused to lift his legs into the vehicle, and then leapt from the car onto one of the officers and began wrestling with him in an effort to break free and run. The officers called for backup, but after briefly wrestling [Santiago], the two police officers were able to handcuff him. The police found that [Santiago] had no keys to 6607 Souder Street.
>
> During the officers' struggle with [Santiago], Ms. Rodriguez stayed inside the house. Her daughter and her daughter's boyfriend were present during the incident and remained in the house as well. The police attempted to speak with Ms. Rodriguez after they secured

[Santiago] in the squad car. She was too upset to speak. After five minutes, she regained sufficient composure to continue. She then related to police that [Santiago] did not live at the house and that he had beaten her earlier that night. The police took Ms. Rodriguez to the emergency room. They arrested [Santiago] and charged him with aggravated assault, attempted burglary, and resisting arrest.

(internal quotations to trial court summary omitted)

## B.      Trial and Conviction

The Pennsylvania Superior Court also summarized the circumstances of Santiago's

conviction:

Ms. Rodriguez did not testify at trial. The arresting officers testified she appeared frightened and upset when they arrived, and screamed through the door at them that [Santiago] was "trying to break in" and had "just beat the s*** out of me." The court denied [Santiago]'s hearsay objection to this testimony, concluding the statements were admissible under the excited utterance exception. The court concluded Ms. Rodriguez's subsequent statements to police at the scene were admissible on the same basis.

Additionally, the Commonwealth introduced a medical chart detailing Ms. Rodriguez's emergency room treatment. The medical record showed she suffered swelling, bruising, and lacerations to her right jaw and left eye. She suffered an accumulation of blood inside her left eye and an abrasion of her left cornea. X-rays of her right jaw revealed no broken bones. She also had a laceration on her right hand which required seven stitches. The treating physician prescribed pain medication, antibiotics, and an eye patch.
      …

The jury convicted [Santiago] of aggravated assault, attempted burglary, and resisting arrest. . . . On January 20, 2004, the court sentenced [Santiago] to 10-20 years imprisonment for aggravated assault, 10-20 years for attempted burglary, and 1-2 years for resisting arrest. The court imposed the sentences consecutively for an aggregate sentence of 21-42 years' incarceration.

(internal quotations to trial court summary omitted).[1]

## C.      Appeals and State Post-Conviction Process

---

[1] Although these are the only convictions presently before the court, I note Santiago is currently serving a life sentence without possibility of parole for the 1985 murder of a Philadelphia police officer. *See* Court of Common Pleas of Philadelphia County, No. CP-51-CR-0902211-1985.

On direct appeal to the Pennsylvania Superior Court, Santiago raised four claims: (1) the admission of Rodriguez's statements at trial violated his right to cross-examine witnesses under the confrontation clause; (2) there was insufficient evidence to support his conviction for aggravated assault; (3) there was insufficient evidence to support his conviction for attempted burglary; and (4) the sentence was an abuse of the trial court's discretion. The Superior Court affirmed Santiago's conviction on July 12, 2005. The Pennsylvania Supreme Court denied Santiago's petition for allowance of appeal on April 18, 2006, and the United States Supreme Court denied Santiago's petition for *certiorari* on October 10, 2006.

On January 8, 2007, Santiago filed a Pennsylvania Post-Conviction Relief Act ("PCRA") petition pursuant to 42 Pa. C.S.A. §§ 9541 *et seq.*[2] Substantive review was based on Santiago's second amended PCRA petition, which he filed on February 11, 2009. In it, Santiago raised six claims: (1) ineffective assistance of counsel for failing to preserve a challenge that his conviction for aggravated assault was against the weight of the evidence; (2) ineffective assistance of counsel for failing to preserve a challenge that his conviction for attempted burglary was against the weight of the evidence; (3) ineffective assistance of counsel for failing to call Rodriguez as a witness; (4) ineffective assistance of counsel for failing to call Rodriguez's daughter, Desiree Garcia, as a witness; (5) prosecutorial interference with Santiago's right to call witnesses due to the prosecutor's alleged intimidation of Rodriguez; and (6) prosecutorial misconduct for referring at sentencing to an alleged statement by Santiago potentially inculpating him in a homicide.

In support of his PCRA petition, Santiago provided signed affidavits from Rodriguez and Garcia. According to Rodriguez, had she been called to the stand, she would have testified that

---

[2] Initially, Santiago's court appointed counsel filed a letter of no merit and sought permission to withdraw, as permitted by *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). Santiago then retained present counsel, who filed an amended PCRA petition and then a second amended petition.

Santiago had never hit her; that her injuries resulted from slipping on the kitchen floor of the Snapperhead Bar during her argument with Santiago; and that, while Santiago broke a glass panel on the front door of her home, he did so without intent to enter the home. According to Garcia, had she been called to the stand, she would have testified that she observed Santiago slip on the floor during his argument with Rodriguez in the restaurant kitchen, resulting in him falling on Rodriguez and injuring her. Garcia says she did not see Santiago strike Rodriguez, though she does not say how much of the altercation she observed.

On December 18, 2009, the PCRA court dismissed Santiago's petition, a decision which it affirmed in an opinion dated April 26, 2010. Santiago appealed this dismissal to the Pennsylvania Superior Court, raising the following issues for review: (1) ineffective assistance of counsel for failing to preserve a challenge to the sufficiency of the evidence for his aggravated assault conviction; (2) ineffective assistance of counsel for failing to preserve a challenge to the sufficiency of the evidence for his attempted burglary conviction; (3) ineffective assistance of counsel for failing to call Rodriguez as a witness; and (4) ineffective assistance of counsel for failing to call Garcia as a witness.[3] The Rodriguez and Garcia affidavits were again before the court. The Superior Court denied PCRA relief on June 15, 2011. The Pennsylvania Supreme Court denied discretionary review on January 25, 2012.

On May 14, 2012, Santiago filed the instant habeas petition pursuant to 28 U.S.C. § 2254. In it, Santiago raises the following claims: (1) the evidence was insufficient to support his aggravated assault conviction; (2) the evidence was insufficient to support his attempted burglary conviction; (3) ineffective assistance of counsel for failing to call Rodriguez as a witness; (4) ineffective assistance of counsel for failing to call Garcia as a witness; (5) hearsay evidence was

---

[3] In his PCRA appeal, Santiago did not raise the prosecutorial interference and prosecutorial misconduct claims that he raised before the PCRA court.

admitted in violation of the confrontation clause; and (6) the government interfered with his right to call witnesses on his behalf by intimidating Rodriguez.

On July 9, 2013, Magistrate Judge Jacob P. Hart issued a report and recommendation recommending the district court grant the writ as to Santiago's claim of ineffective assistance of counsel for failure to call Garcia as a witness, with remand to the Pennsylvania courts to vacate Santiago's conviction for aggravated assault and retrial on that charge. The report and recommendation otherwise recommended the district court deny Santiago's petition. Thereafter, respondents filed objections to those portions of the report and recommendation recommending I grant the writ, and Santiago filed objections to those portions of the report and recommendation recommending I deny the writ. The parties then filed responses to each other's objections.

## II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2841 *et seq.*, governs the court's review of this habeas petition. Under AEDPA, a "district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. § 2254(a). Habeas relief is unwarranted "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).

Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews *de novo* those portions of the magistrate judge's findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1).

## III.    Discussion

Each of Magistrate Judge Hart's recommendations has drawn objection from either the respondents or Santiago. I will review each of Santiago's claims for relief *de novo*. *See* 28 U.S.C. § 636(b)(1).

### A.    Sufficiency of the Evidence

Santiago claims the evidence at trial was insufficient to support his convictions for aggravated assault and attempted burglary. The standard for sufficiency of the evidence claims was set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). Under *Jackson*, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011); *see also United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008) ("[W]e will sustain a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). This is because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id*. Second, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Coleman*, 132 S. Ct. at 2062 (internal quotations omitted).

Santiago's *Jackson* challenges were heard and rejected by the Pennsylvania Superior Court on direct appeal. For Santiago's *Jackson* challenges to succeed, then, he must show both (1) no rational trier of fact could have agreed with the jury's determination that he was guilty of the charged offenses, and (2) the Pennsylvania Superior Court was objectively unreasonable in finding to the contrary. *See Cavazos*, 132 S. Ct. at 4; *Coleman*, 132 S. Ct. at 2062.

      **1.**      **Aggravated Assault**

Santiago contends in his petition that the evidence at trial was insufficient to support a finding that he inflicted a serious bodily injury upon Rodriguez or intended to inflict a serious bodily injury upon Rodriguez. He claims his conviction for aggravated assault was therefore improper.

In Pennsylvania, a person may be convicted of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S.A. § 2702(a)(1). Under this standard, "[w]here the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow was delivered with the intent to inflict serious bodily injury." *Commonwealth v. Alexander*, 477 Pa. 190, 194 (1978). A "serious bodily injury" is a "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ." 18 Pa. C.S.A. § 2301.

"For aggravated assault purposes, an 'attempt' is found when the accused . . . acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Matthews*, 870 A.2d 924, 929 (Pa. Super. 2005) (*en banc*). As to the

specific intent requirement, "intent is a subjective frame of mind . . . [and] may be inferred from acts or conduct or from the attendant circumstances." *Id.* Generally speaking, whether an accused acts with intent to cause serious bodily injury "must be determined on a case-by-case basis." *Commonwealth v. Dailey*, 828 A.2d 356, 360 (Pa. Super. 2003).

In *Commonwealth v. Alexander*, the Pennsylvania Supreme Court held a jury may not reasonably infer intent to inflict serious bodily injury from the mere fact that the defendant delivered a single punch to the head of the victim. *See Alexander*, 477 Pa. at 194; *see also id.* ("Appellant delivered one punch and walked away."). But *Alexander* distinguished such a case from one in which a defendant was "disproportionately larger or stronger than the victim; . . . [was] restrained from escalating his attack upon the victim; possessed a weapon or other implement to aid his attack; . . . [or who] made statements before, during, or after the attack which might indicate his intent to inflict further injury upon the victim." *Id.* The Pennsylvania Superior Court has subsequently found juries to have validly inferred intent to inflict serious bodily injury in a range of situations involving multiple punches and/or a single punch followed by physical restraint or the intervention of others. *See Dailey*, 828 A.2d at 361.

In Santiago's case, the Superior Court found "the circumstantial evidence was sufficient for the jury to determine [Santiago's] conduct evidenced his intent to inflict a protracted impairment . . . to the victim's head . . . and jaw; in other words, to inflict serious bodily injury." The court noted the "bar owner testified she saw no marks on the victim's face initially, [but l]ater, the bar owner went to the kitchen, where the victim and [Santiago] were arguing, and observed a bloody cut near the victim's eye." Based on this, the Superior Court concluded that "although there was no direct proof, circumstantial evidence reasonably established that [Santiago] had punched the victim in the eye." Moreover, the Superior Court concluded "the

circumstantial evidence raised a reasonable inference [Santiago] struck the victim in the face more than once" because "the bar owner testified she saw [Santiago] swing his fist multiple times toward the victim" and the "medical evidence revealed the victim had a swollen right jaw in addition to an injured left eye." The Superior Court observed finally that "it is undisputed that [Santiago's] assault of the victim at the bar only ended when others intervened to restrain him."

The Superior Court's characterization of the evidence is fair, and I further note it is undisputed that, after being restrained during his confrontation with Rodriguez at the Snapperhead Bar, Santiago followed Rodriguez to her home and broke her glass door. This evidence is all relevant to Santiago's state of mind with respect to Rodriguez, and it provides ample basis for a reasonable person to infer that Santiago intended to inflict serious bodily injury upon Rodriguez when he punched her and/or attempted to punch her in the kitchen of the Snapperhead Bar. *See Alexander*, 477 Pa. at 194; *Matthews*, 870 A.2d at 929; *Dailey*, 828 A.2d at 361. I therefore cannot say that "no rational trier of fact could have agreed with the jury" that Santiago intended to seriously injure Rodriguez or that he took substantial steps toward inflicting a serious bodily injury. *Cavazos*, 132 S. Ct. at 4; *Matthews*, 870 A.2d 924 (stating elements of aggravated assault). Moreover, I certainly cannot say the Superior Court was "objectively unreasonable" in finding there was sufficient evidence on which to convict Santiago of aggravated assault. *See Coleman*, 132 S. Ct. at 2062. Accordingly, Santiago fails to show he is entitled to relief on his claim challenging the sufficiency of the evidence for his conviction for aggravated assault.

### 2.    **Attempted Burglary**

In his petition for relief, Santiago contends the evidence was insufficient to support his conviction for attempted burglary, such that this conviction was improper as well.

In Pennsylvania, a person commits burglary when he "enters a building or occupied structure . . . with intent to commit a crime therein, unless the premises are at that time open to the public or the actor is licensed or privileged to enter." 18 Pa. C.S.A. § 3502(a). A criminal attempt, meanwhile, consists of (1) intent to commit a specific crime, and (2) a substantial step toward the commission of that crime. *Id.* § 901. As in the case of aggravated assault, "intent may be proved by direct evidence or inferred from circumstantial evidence." *Com. v. Galindes*, 786 A.2d 1004, 1009 (Pa. Super. 2001).

In considering Santiago's challenge on direct appeal, the Pennsylvania Superior Court noted the following:

> [L]ess than one hour after having assaulted the victim at her place of work, [Santiago] appeared at her home, screaming and banging on her locked door. When the police arrived, several panes of glass in the door had been smashed and appellant was bleeding from lacerations on his arms. There was blood on the glass and door as well. The victim was screaming "he's trying to break in" and "he just beat the s*** out of me.

According to the Superior Court, these "facts permitted the jury to infer [Santiago] smashed the glass [on Rodriguez's door], and had inserted and removed his arm in an attempt to gain entry to continue his assault of the victim." In turn, the Superior Court found "the evidence allowed the jury to conclude the Commonwealth had established all the elements of attempted burglary beyond a reasonable doubt."

Indeed, a reasonable person may infer from shattered doorpanes, cuts on Santiago's arms, blood on the door, and Rodriguez's exclamation that "he's trying to break in" that Santiago broke the glass door in an attempt to enter the premises. And if Santiago did attempt entry, it is reasonable to infer from his immediately prior assault of Rodriguez at the Snapperhead Bar and the fact that this assault was ended only upon being restrained that he sought entry in order to again attack Rodriguez. Finally, it reasonable to infer that Santiago's entrance was not

privileged, as he had no keys to the apartment and Rodriguez exclaimed upon the arrival of police that he was "trying to break in." Santiago urges me to consider alternative inferences that might be drawn from the evidence, but these are irrelevant on habeas review. *See McDaniel v. Brown*, 558 U.S. 120, 133 (2010) ("A reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (internal quotation omitted).

As plausible inferences may indicate the presence of each element of attempted burglary, *see Cannon*, 443 A.2d at 324, I cannot say "no rational trier of fact could have agreed with the jury," *Cavazos*, 132 S. Ct. at 4. Moreover, I certainly cannot say the Superior Court was "objectively unreasonable" in finding there was sufficient evidence to convict Santiago of attempted burglary. *See Coleman*, 132 S. Ct. at 2062. Accordingly, Santiago fails to show he is entitled to relief on his claim challenging the sufficiency of the evidence for his attempted burglary conviction.

### B.    Ineffective Assistance of Counsel

Santiago next claims his trial counsel was ineffective for failing to investigate and/or call Rodriguez and/or Garcia as witnesses. Santiago raised these claims before the PCRA court and the Pennsylvania Superior Court on his PCRA appeal.

"The Supreme Court established the legal principles governing Sixth Amendment claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013). *Strickland* sets forth a two part test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, "the defendant must

show that the deficient performance prejudiced the defense. This requires showing that counsel's

errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id*. Under this framework, counsel is "strongly presumed to have rendered adequate assistance

and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v.

Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690).

The standards of *Strickland* require a court to "take a highly deferential look at counsel's

performance" in evaluating an ineffectiveness claim. *Pinholster*, 131 S. Ct. at 1403. But the

review is "doubly deferential" for a federal habeas court reviewing "through the deferential lens

of § 2254(d)." *Id*. "When a federal habeas petition under § 2254 is based upon an ineffective

assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the

*Strickland* standard was unreasonable.'" *Grant*, 709 F.3d at 232 (quoting *Harrington v. Richter*,

131 S. Ct. 770, 785 (2011)). "This is different from asking whether defense counsel's

performance fell below *Strickland*'s standard." *Harrington*, 131 S. Ct. at 785. Accordingly, "[a]

state court must be granted a deference and latitude that are not in operation when the case

involves [direct] review under the *Strickland* standard itself." *Id*.

Finally, when the Pennsylvania Superior Court assessed Santiago's ineffective assistance

of counsel claims in his PCRA appeal, it applied the standard for ineffective assistance of

counsel articulated by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 527 A.2d

973 (Pa. 1987). Under *Pierce*, to overcome the presumption of counsel's effectiveness, a

petitioner has the burden of demonstrating (1) his underlying claim is of arguable merit; (2) the

particular course of conduct pursued by counsel did not have some reasonable basis designed to

effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability

that the outcome of the challenged proceeding would have been different. *Id*. According to the Pennsylvania Supreme Court, the standards of *Pierce* and *Strickland* "constitute the same rule," *Pierce*, 527 A.2d at 976-77, while the Third Circuit has held that, at a minimum, the standards of *Pierce* are not "contrary to" those of *Strickland* for purposes of AEDPA. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Accordingly, application of *Pierce* and its progeny will not result in a decision that is "contrary to, or involving an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States." *See* § 2254(d)1); *Werts*, 228 F.3d at 204 ("Here, the state appellate courts did not apply a rule of law that contradicts the Supreme Court's holding in *Strickland*. Accordingly, we find that the state appellate court's decision was not contrary to established Supreme Court precedent.").

### 1.    Rodriguez

In Pennsylvania, to succeed on a claim that counsel was ineffective for failing to call a witness, "an appellant must demonstrate that . . . the witness was available to testify for the defense . . . and the witness was prepared to cooperate and would have testified on [the] appellant's behalf." *Com. v. Wright*, 599 Pa. 270, 331 (2008). The PCRA court found Rodriguez had not been willing to testify at trial and concluded the Pennsylvania rule therefore meant trial counsel could not be ineffective for failing to call her as a witness.

When the Pennsylvania Superior Court reviewed this claim on appeal, it noted Rodriguez's testimony at Santiago's sentencing hearing established that she refused multiple entreaties by the Commonwealth for her to testify at trial. The Superior Court also noted Rodriguez stated in her affidavit that she "really did not want to testify at trial" because she "got the impression that if [she] did not testify in a way that would convict [Santiago], that the police or prosecutor would try to charge [her] with a crime." In light of the foregoing, the Superior

14

Court concluded Santiago failed to demonstrate an "underlying claim of arguable merit" within the meaning of *Pierce. See Pierce*, 527 A.2d 973.

Given Rodriguez's testimony at sentencing and her statements in her affidavit, the finding that Rodriguez was unwilling to testify at trial was not an "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Meanwhile, given the Third Circuit's holding that *Pierce* is not contrary to *Strickland*, habeas relief is not available where the Pennsylvania courts deny relief on the basis that counsel cannot be ineffective for failing to call an unwilling witness. *See* § 2254(d)(1); *Werts*, 228 F.3d at 204; *Wright*, 599 Pa. at 331.[4] To the extent Rodriguez was unwilling to testify, the Pennsylvania rule is on all fours, and Santiago's petition for relief must fail. *See* § 2254(d)(1).

### 2.    Garcia

The PCRA court denied Santiago's petition as to counsel's failure to call Garcia because it concluded Santiago was not prejudiced by the absence of Garcia's testimony as to either his aggravated assault conviction or his attempted burglary conviction.

Regarding Santiago's aggravated assault conviction, the PCRA court found the owner of the Snapperhead Bar interrupted three consecutive altercations between Santiago and Rodriguez. It further noted the Superior Court's finding on direct appeal that circumstantial evidence reasonably established Santiago punched Rodriguez in the

---

[4] There is some doctrinal incongruity in the Pennsylvania caselaw as to whether this rule of law is an extension of *Pierce* or is rather a bar to recovery independent from *Pierce*. Here, the Pennsylvania Superior Court applied the rule as a part of the arguable merit prong of *Pierce*. In view of judicial comity, I treat the Pennsylvania rule as part of *Pierce* and entitled to the deference directed by *Werts*. I note, however, that under direct application of *Strickland*, it is difficult to see how counsel could prejudice a defendant by failing to call a witness who is not willing to testify. As the PCRA court noted, Rodriguez indicated her unwillingness to testify at trial in her sentencing hearing testimony and again in her PCRA affidavit.

eye before the last episode of fighting in the kitchen, and that previous testimony indicated Garcia was present for only the final physical confrontation. Because of this, the court concluded Garcia's testimony that Santiago did not punch Rodriguez during the final physical confrontation would not have undermined the basis of the aggravated assault conviction.

Santiago does not directly address the PCRA court's analysis of the aggravated assault issues in his petition for habeas corpus. But, as described above in the context of Santiago's sufficiency of the evidence claim, the charge of aggravated assault is adequately supported in Pennsylvania when a defendant assaults a victim with intent to inflict serious bodily injury. *Alexander*, 477 Pa. at 194. The question of whether such intent is present does not lend itself easily to categorical rules; rather, it "must be determined on a case-by-case basis." *See Dailey*, 828 A.2d at 360. Here, a male defendant punched a female victim in the face, repeatedly re-initiated a physical altercation despite multiple interventions, and followed the victim back to her home where he punched through the glass of her front door under circumstances from which the jury inferred intent to continue his assault therein. This is ample evidence from which a jury might reasonably infer Santiago intended to inflict serious bodily injury on Rodriguez at the time he first punched her in the kitchen—even if the final altercation at the kitchen consisted merely of angry tussling rather than swinging fists. *See* Alexander, 477 Pa. at 194 (stating that where a defendant punched a victim once, factors relevant to whether there was intent to seriously injure include where the defendant is "disproportionately larger or stronger than the victim; . . . [was] restrained from escalating his attack upon the victim; possessed a weapon or other implement to aid his

attack; . . . [or who] made statements before, during, or after the attack which might indicate his intent to inflict further injury upon the victim.").

Because there is ample evidence on which to support Santiago's conviction for aggravated assault regardless of Garcia's testimony, I am not persuaded that the absence of that testimony "deprive[d] [Santiago] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. At a minimum, I cannot say "the state court's application of the *Strickland* standard was unreasonable" as to whether Santiago was prejudiced on his aggravated assault conviction by the absence of Garcia's testimony. *Grant*, 709 F.3d at 232; *Harrington*, 131 S. Ct. at 785.[5]

Regarding Santiago's attempted burglary conviction, the PCRA court noted Garcia admitted in her affidavit that she not see Santiago break the glass door. The PCRA court thus found Garcia's statement in her affidavit that Santiago did not attempt to gain entry to be inadmissible speculation.  Finally, Garcia's affidavit confirmed a fight between Santiago and police officers outside Rodriguez's home. In light of its analysis, the PCRA court concluded there was no arguable merit to Santiago's claim that he was prejudiced by the failure to call Garcia. *See Strickland*, 466 U.S. at 687; *Pierce*, 527 A.2d at 976-77. On Santiago's appeal from the PCRA court, the Pennsylvania Superior Court's analysis was limited to a summary of Garcia's statement and the PCRA court's analysis; it found the PCRA court did not abuse its discretion in concluding the omission of Garcia's testimony resulted in no prejudice to Santiago.

I agree with the Superior Court's analysis of the issues relevant to attempted burglary—because Garcia admits she did not see Santiago punch the door, her

---

[5] Because this component of Santiago's petition fails regardless of the truth of Garcia's affidavit, whether or not Garcia is credible is moot.

speculative conclusions would be irrelevant to the jury's analysis. Accordingly, Santiago was not "deprived . . . of a fair trial" as to the attempted burglary conviction, either. *Strickland*, 466 U.S. at 687.

### C.     Confrontation Clause

Santiago next claims his Sixth Amendment right to confront witnesses was violated when the trial court admitted, over counsel's objection, the statements Rodriguez made to police after the altercation at her home concluded and Santiago was safely in the police vehicle. In these statements, Rodriguez told police that Santiago did not live at the house and that he had beaten her earlier that night.[6]

On direct appeal, the Pennsylvania Superior Court did not dispute Santiago's contention that Rodriguez's statements should not have been admitted at trial. Rather, the Superior Court determined that any error in their admission was harmless because the statements were cumulative of properly admitted non-testimonial declarations shouted by Rodriguez when police first arrived on the scene. In his habeas petition, Santiago contends Rodriguez's statements harmed him with respect to his aggravated assault conviction because they tended to show Santiago had assaulted Rodriguez earlier in the evening. He further contends the statements harmed him with respect to his attempted burglary conviction because they tended to show Santiago was not privileged to enter Rodriguez's home and that he would have assaulted Rodriguez if he had entered the home.

---

[6] In his direct appeal, Santiago contended that his confrontation clause rights were also violated by the trial court's admission of Rodriguez's exclamations to the police when they first arrived at home during the last of her altercations with Santiago. These exclamations were: "he's trying to break in" and "he just beat the s*** out of me." In his habeas petition, Santiago concedes these exclamations were not induced by police questioning and therefore not testimonial. Under clearly established federal law, non-testimonial statements are beyond the scope of the confrontation clause. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Santiago does not further discuss the exclamations in his petition for habeas corpus.

It is clearly established that "evidentiary rulings in violation of the confrontation clause are subject to harmless error analysis." *Wright v. Vaughn*, 473 F.3d 85, 93 (3d Cir. 2006) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). "Whether such an error is harmless in a particular case depends upon a host of factors . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

Given the Superior Court's analysis, I will deny Santiago's confrontation clause challenge. The jury independently possessed substantial information indicating Santiago was not privileged to enter Rodriguez's home; these included Santiago's lack of a key, and, as the Superior Court noted, Rodriguez's previous excited utterance that "he's trying to break in." Similarly, there was substantial independent information that Santiago had previously assaulted Rodriguez, including medical records of Rodriguez's injuries, the eyewitness accounts of the altercations at the Snapperhead Bar kitchen, and Rodriguez's prior excited utterance that "he just beat the s*** out of me." The Superior Court reasonably applied clearly established federal law as stated in *Van Ardsall* when it determined that the admission of Rodriguez's statements were harmless error because they were cumulative of her previous, admissible statements. *See Van Arsdall*, 475 U.S. at 684.

### D.    Prosecutorial Misconduct

Santiago finally claims that the prosecutor interfered with his Sixth Amendment right to call witnesses on his behalf by intimidating Rodriguez from testifying. Although Santiago raised this issue in his second amended petition to the PCRA court, he did not raise this issue in his

PCRA appeal, which was devoted entirely to a series of ineffective assistance of counsel claims. He did not raise this issue on his direct appeal, either.

Where there are effective state processes available to a defendant to correct constitutional error, a petition for habeas corpus will not be granted unless the petitioner has exhausted those available state court remedies. § 2254(b)(1). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Here, because Santiago failed to present his prosecutorial misconduct challenge in his direct appeal to the Pennsylvania Superior Court or in his PCRA appeal despite full opportunity to do so, he did not exhaust the state court remedies available to him. *See id*. Moreover, Santiago is unable to pursue exhaustion in the future, as—save for inapposite exceptions not invoked by Santiago— PCRA petitions may only be filed within one year of the date that a judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). Santiago's judgment became final on October 10, 2006, when the United States Supreme Court denied *certiorari*.

As Santiago failed to present his claim to the Pennsylvania Superior Court and is unable to do so in the future, he has defaulted his claims for purposes of this court as well. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Santiago

demonstrates no cause for default nor does he explain how a miscarriage of justice would result if the claim was not reviewed. *See id.* His default may not be overcome, and his claim is ineligible for federal habeas review.

An appropriate order follows.